BARRUS CONSTRUCTION COMPANY, A DIVISION OF APAC-CAROLINA, INC. v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

No. 8411SC195

(Filed 18 December 1984)

1. **Highways and Cartways § 9— highway contract claim—alias summons—proper service of process**

Where plaintiff's suit on a highway contract claim was filed and summons was issued within six months after the final decision of the State Highway Administrator as required by G.S. 136-29 but the summons was not properly served on defendant Department of Transportation's registered process agent or the Attorney General, plaintiff timely continued its action by obtaining an alias summons thirty-five days after issuance of the original summons although the alias summons was obtained after the six-month period had expired, and defendant's motion to dismiss was properly denied where the alias summons was served in due time on the defendant.

2. **Highways and Cartways § 9— highway construction contracts—unequal extensions of interim and final completion dates**

Where a highway construction contract provided for completion of all work except certain landscaping by an interim completion date, followed by a 180-day inspection period, and ending in a final completion date, provided for liquidated damages of three hundred dollars per day for overrunning of each completion date, and allowed the Department of Transportation to grant extensions for good cause shown, the Department of Transportation was not required to grant an extension of the final completion date which was 180 days after the extended interim completion date but could grant unequal extensions for the interim and final completion dates.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 16 November 1983 in JOHNSTON County Superior Court. Heard in the Court of Appeals 13 November 1984.

Plaintiff construction company entered into a highway improvement contract with the North Carolina Department of Transportation ("the DOT"). The contract provided for completion of all work except certain landscaping by an "interim completion date," followed by a 180-day inspection period, ending in a "final completion date," to check the performance of highway markings. The original interim and final completion dates were set at 15 November 1978 and 1 May 1979, respectively; the interval was only 166 days. The contract provided for liquidated damages of $300 per day for overrunning each completion date; it also allowed the DOT to grant extensions for good cause shown.

Various problems arose, resulting in substantial delays in the project. Actual completion of intermediate work did not occur until 30 June 1979, and actual final acceptance took place 27 December 1979, 180 days later.

On 12 September 1979 plaintiff applied for extensions of both the intermediate and final completion dates. Plaintiff asked for an interim date of 6 May 1979, an extension of 172 days, and a final date of 10 November 1979, an extension of 198 days. The interval between the two requested dates was 192 days. The DOT extended the intermediate date to 18 March 1979, an additional 123 days, and the final date to 16 July 1979, an additional 76 days. This resulted in an interval of 120 days.

The DOT assessed liquidated damages according to its adjusted dates, and plaintiff filed a verified claim. Plaintiff contended that the final completion date should have been adjusted equally with the interim date, to keep the 180-day interval constant. Thus, the final date would become 14 September 1979, 180 days after the DOT's adjusted interim date of 18 March 1979. The difference of 60 days would reduce the DOT's assessment by $18,000, the amount of plaintiff's claim. For clarity, a table showing the various dates follows:

Barrus Construction Co. v. N.C. Dept. of Transportation

| | Original Contract | Plaintiff's Requested Adjustment | Plaintiff's Requested Date | Adjustment Allowed by DOT | Adjusted Contract Dates | Actual Dates | Overrun |
|---|---|---|---|---|---|---|---|
| Intermediate Completion Date | 15 November 1978 | 172 days | 6 May 1979 | 122 days | 18 March 1979 | 30 June 1979 | 104 days |
| Final Completion Date | 1 May 1979 | 198 days | 10 November 1979 | 76 days | 16 July 1979[a] | 27 December 1979 | 164 days[b] |
| Difference | 166 days | 26 days | 192 days | 46 days | 120 days[c] | 180 days | |
| | | | | | | TOTAL OVERRUN | 268 days[d] |

a Plaintiff contended this should be 14 September 1979, 60 additional days, to keep 180 day interval

b Plaintiff's contended date yields 104 days

c See note a

d Plaintiff's contended date yields 208 days

On 22 February 1982, the State Highway Administrator denied plaintiff's claim, and plaintiff filed suit on 17 August 1982. The DOT moved to dismiss for lack of timely service of process, but the court denied the motion. Discovery ensued; plaintiff moved for summary judgment based on the pleadings, discovery materials, and stipulated facts. The trial court granted summary judgment in favor of the DOT, however, and plaintiff appealed.

*White, Allen, Hooten & Hodges, P.A., by John C. Archie, for plaintiff.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for defendant.*

WELLS, Judge.

[1] We address first the DOT's cross assignment of error that service of process was not timely and that the court erred in denying its motion to dismiss. The state has consented to suit on highway contract claims. N.C. Gen. Stat. § 136-29 (1981 and Cum. Supp. 1983). Such a suit is timely filed if instituted by filing of complaint and issuance of summons within six months after the final decision of the State Highway Administrator denying the claim. *Id.* Plaintiff filed its complaint, and summons issued, within the time set by statute. However, the summons was not properly served on the DOT's registered process agent or the Attorney General as required by N.C. Gen. Stat. § 1A-1, Rule 4(j)(4) of the Rules of Civil Procedure (1983). After the six-month period had expired, but only 30 days after issuance of the original summons, the DOT moved to dismiss. Five days later, and 35 days after issuance of the original summons, plaintiff obtained an alias or pluries summons which was properly served in due time on the DOT. The trial court ruled that the alias summons continued the action and denied the DOT's motion. We affirm that ruling.

G.S. § 136-29 only requires institution of the civil action, not service of process, within six months. N.C. Gen. Stat. § 1A-1, Rule 4(d) of the Rules of Civil Procedure (1983) provides that a civil action may be continued in existence against "*any* defendant" (emphasis added) by suing out alias summons within 90 days of the last preceding summons. No special attention to this rule appears for suits against the state, nor does this civil action appear to be any different from other civil actions. The state, once it has con-

sented to suit, occupies the same position as any other litigant. *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976). There is no indication that the original summons designated the wrong defendant, only that it was incorrectly served. *Compare Roshelli v. Sperry*, 57 N.C. App. 305, 291 S.E. 2d 355 (1982) (correcting summons to name correct defendant institution of new action). We therefore hold that although the first service was of no effect, *Stone v. Hicks*, 45 N.C. App. 66, 262 S.E. 2d 318 (1980), plaintiff timely continued its action in existence and dismissal was improper. Rule 4(d); *Williams v. Bray*, 273 N.C. 198, 159 S.E. 2d 556 (1968); *see also Consolidation Coal Co. v. Disabled Miners of So. W. Va.*, 442 F. 2d 1261 (4th Cir.), *cert. denied*, 404 U.S. 911 (1971) (error to dismiss where second, correct service timely). The court had jurisdiction and correctly denied the DOT's motion.

Turning now to the merits, we note that summary judgment may be granted to the non-moving party in appropriate cases. *A-S-P Associates v. City of Raleigh*, 38 N.C. App. 271, 247 S.E. 2d 800 (1978), *rev'd on other grounds*, 298 N.C. 207, 258 S.E. 2d 444 (1979). Where dispute arises only as to questions of law, summary judgment is appropriate. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Both parties concede in their briefs that there is no dispute concerning any material fact. "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." *Lane v. Scarborough*, 284 N.C. 407, 200 S.E. 2d 622 (1973); *see also Salvation Army v. Welfare*, 63 N.C. App. 156, 303 S.E. 2d 658 (1983), *disc. rev. denied*, 311 N.C. 306, 317 S.E. 2d 682 (1984); 4 S. Williston, Law of Contracts § 616 (3d ed. 1961); Restatement (Second) of Contracts § 200, Comment c. (1981). Since this contract is in writing, and the facts are undisputed, its legal effect was for the court and summary judgment was appropriate.

[2] Plaintiff's position is simple: since the contract expressly provides that there will be a 180-day inspection period *after* the intermediate completion date, the DOT, in adjusting the intermediate date, was required to correspondingly adjust the final contract completion date to reflect the 180-day interval. Therefore, plaintiff and not the DOT was entitled to judgment. We disagree.

First, the contract sets intermediate and final contract time separately, and sets liquidated damages separately for overruns of each date. Second, it separately provides that intermediate completion dates "may be extended on the same basis as [final] completion dates . . . ." Nowhere does the contract require that extensions to the intermediate date be matched exactly by extensions to the final date. Rather, it simply provides that such extensions *may* be made. Third, it provides that extensions of time or remittances of damages for delay shall be "only to the extent and in the proportion that such delays were caused by the conditions set forth in [the section describing good cause for which the DOT would grant extensions]." The contract thus clearly reflects an intent to allow the DOT discretion in adjusting extensions to avoid unfairness.

The undisputed facts show that even before its request for an extension, plaintiff had accepted unequal extensions of the intermediate and final dates. In fact, the original dates agreed upon were 166 days apart, although the DOT later adjusted the final contract date to reflect the proper interval as part of its response to plaintiff's original verified claim. Plaintiff then stipulated to separate groups of "authorized time extensions" for the two contract dates. Only one of the items appears as an extension to both dates. The major item of difference, a 90-day winter weather extension, was added only to the intermediate date in adherence to the terms of the contract, which provides that upon authorized extension beyond 15 December the 90 days is added automatically to the contract time. The final contract date, however, was not extended beyond 15 December and thus did not receive the 90-day extension. Plaintiff does not object to this discrepancy, insisting instead on the inflexibility of the 180-day interval.

It is apparent however from both the plaintiff's claim and the DOT's answers to interrogatories that adjustments to contract time reflect in large part contract, and not actual, time. By the time plaintiff submitted its claim, it had already completed the work, subject only to possible correction of pavement markings. Plaintiff was already in breach under the terms of the contract; allowing extensions served only to reduce the amount of damages assessed, not to extend time to complete the work. Even accepting plaintiff's requested extensions *in toto*, substantial damages would still be due. The distinction between contract time and ac-

tual time is crucial. We note that the DOT, in adjusting contract time, did correct the original mistake in setting the interval 166 days. Contract time thus properly allowed 180 days. The adjustments made, while generally reflecting actual delays, did not correspond exactly to work in the field as plaintiff contends.

The 90-day adjustment mentioned above is one example; plaintiff received it even though it is clear from the record that work continued during the period 15 December-16 March. Plaintiff arrived at several components of its request for extension not by computing actual delays, but by calculations such as multiplying the ratio (cost overruns/contract price) times contract time to arrive at an estimated extension, or by estimating production percentage shortfalls and requesting extensions by multiplying that percentage times the days of production slowdown. Of special note in light of plaintiff's present position is its request, thus arrived at, for a 192-day interval between the intermediate and final contract dates.

The DOT's explanations for the extensions allowed similarly reflect contract adjustments. The DOT adopted the same methodology as plaintiff in computing overrun and underrun extensions. It used a "theoretical pro rata basis" in these calculations. In addition it adjusted the final date based on percentage modifications of the arbitrary winter extension period. It is clear from all this evidence that the adjustments in contract time after breach were to properly adjust damages, not to change actual time of performance.

Plaintiff does not contend that any of the extensions granted by the DOT are unjustifiably small. Nor does it contend that any specific adjustment should have been made which was not made. Nor does it contend that by assessing liquidated damages for overruns of both the intermediate and final contract dates, the DOT unfairly doubled the damages. It admits that the erroneous interval in the original contract has been corrected. Its only contention, simply put, is that, having received a more favorable extension of the intermediate date than the final date, it is entitled to an equal adjustment to the final date. In light of the distinction between contract time and actual time discussed above, the DOT could have simply used its "theoretical pro rata" extensions and the like to add extension days *equally* to both dates, leaving the

same number of days' delay and yet keeping the 180-day interval. Under the circumstances, we conclude that on this record, defendant was entitled to summary judgment.

Affirmed.

Judges ARNOLD and BECTON concur.